8797

TALBERT v. TALBERT *ET AL.*

(81 S. E. 644.)

MORTGAGE. EVIDENCE. FRAUDULENT CONVEYANCES.

1. Person in possession of negotiable note payable to bearer and accompanying mortgage is *prima facie* the owner thereof.

2. Testimony that a paper, alleged to be lost, was deposited for safe-keeping in defendant's bank, and cannot after search be found and notice to defendant to produce, is sufficient to admit secondary evidence as to its contents.

3. A holder of a written obligation for payment of money cannot be affected by uncommunicated declarations of maker or prior holder.

4. A mortgage being unsatisfied of record is a circumstance to put persons dealing with mortgagor on inquiry as to who holds it and whether or not its lien has been discharged.

5. Evidence too indefinite to show assignment of note and mortgage in question to be voluntary or fraudulent as to subsequent creditors of mortgagor.

Before SHIPP, J., Abbeville, December, 1913. Affirmed.

Action by Mrs. M. L. Talbert against John L. Talbert, The Farmers Bank and G. J. Sanders, Trustees in Bankruptcy, for foreclosure of a mortgage. The Farmers Bank appeals.

The decree of the Circuit Court was as follows:

The complaint in the above stated case is for the foreclosure of the mortgage executed by the defendant, John L. Talbert, to the Bank of McCormick, dated March 30th, 1908, covering the lot described in the complaint and securing a note of the same date, payable one year after date, in the sum of two thousand seven hundred eighteen and 29-100 ($2,718.20) dollars, with interest after maturity at the rate of eight per cent. per annum, and providing that if the note be collected by an attorney that the said John L. Talbert would pay ten per cent. attorney's fees for the collection thereof, in addition to the principal and interest. The execution of the note and mortgage is admitted by the Farmers Bank of McCormick, which is the only party answering the complaint. The other parties have made default.

The Farmers Bank of McCormick denies in its answer served herein that the note and mortgage have been assigned to the plaintiff herein, as alleged in her complaint, but alleges. that at the time of the alleged assignment, the money paid to the Bank of McCormick was furnished by John L. Talbert and that the mortgage was in fact paid off, but that if it was assigned, it was for the purpose of defrauding creditors, existing or subsequent. The defendant, the Farmers Bank, also alleges that subsequent to the date of the alleged assignment, the said John L. Talbert, in certain transactions, became largely indebted to the bank, and that although the money was furnished by him to pay off the mortgage, nevertheless, it was assigned to his mother, the plaintiff, Mrs. M. L. Talbert, for the purpose of defrauding his subsequent creditors, and that they entered into a conspiracy to this effect. He further alleges that the plaintiff, Mrs. M. L. Talbert, well knew that he was borrowing large sums of money from the defendant, the Farmers Bank of McCormick, and that he was representing the mortgage to be paid and that she acquiesced in the statement and assisted him in defrauding the bank.

The whole question turns upon whether or not there was an assignment in this case and as to whether the plaintiff *bona fide* purchased the note and mortgage upon which the action is based. The testimony shows that the mortgage is lost. H. Q. Talbert, who was the managing agent for the plaintiff, and John L. Talbert, both testify that the mortgage in this case was deposited with the Farmers Bank for safe-keeping along with the deed and insurance policy, which the bank produces, and the officers deny this. Notice was given to the bank to produce the papers, which it failed to do for the reason, as stated by the officers, that they did not have the papers. The Talberts, both, testify that they have searched in every other place where the paper might be and they have been unable to find it. It appears to the Court that it is not within the power of the plaintiff to produce the paper, and secondary evidence as to the contents of the alleged assignment is therefore admissible and it is so held. Besides this, the testimony shows that the note and mortgage were purchased and that the consideration for the assignment was actually paid and the note and mortgage were delivered to the agent of the plaintiff herein. If this was her money and the transaction was *bona fide,* the delivery of the papers upon the payment of the purchase money therefor was a sufficient assignment to be enforcible in a court of equity, and it is so held and adjudged.

The question, then, for consideration is: Did the plaintiff, Mrs. M. L. Talbert, purchase the note and mortgage *bona fide?* The testimony abundantly proves, and I find, that about February 20th, 1909, she purchased the note and mortgage and took an assignment therefor. I find from the testimony, that at such time she had on hand about the sum of one thousand three hundred dollars, which she had obtained from a dividend in the matter of Britt & Company, bankrupts, and from the sale of cotton and stocks, and in various ways. On that date, or thereafter, John L. Talbert, gave her a check for four hundred dollars on a debt which

was due her, as he testifies, for lumber in building the house on the lot now sought to be sold.    There is no testimony to dispute this.    Six hundred dollars of the money, the plaintiff borrowed from Mrs. Corriesande Talbert, wife of John L. Talbert, giving her a note therefor dated February 20th, 1909, and the books of the bank show that the check for this amount of money was paid two days later.    Her son, R. C. Talbert, a very short while before, had received from the bankrupt estate of Britt & Company two hundred twenty-six and 34-100 dollars and out of this sum he gave his mother two hundred and twenty-five dollars, with which she purchased this mortgage, and he and his father, H. Q. Talbert, on November 20th, 1909, borrowed about two hundred dollars more from the bank of McCormick, which made up the amount of the mortgage.    There is no testimony to dispute any of these facts and the Court must consider this as established.    Such being the case, the Court finds, as a matter of fact, that Mrs. M. L. Talbert did purchase the note and mortgage on February 20th, 1909, or thereabouts, and that she paid the purchase money therefor and took a valid and *bona fide* assignment of the note and mortgage.    Counsel for the defendant bank called attention to the fact that John L. Talbert's check and the check of Mrs. Corriesande Talbert were not paid until February 22d, when the testimony shows that the assignment of the mortgage was on February 20th, 1909, and that some of the witnesses testified that the purchase price of the assignment was all paid in currency.    This happened a considerable time ago, and the witnesses may be easily mistaken as to the medium of payment.    The greater portion of the consideration was likely paid in currency, but it seems likely to the Court that the four hundred dollar check of John L. Talbert and the check of six hundred dollars of Mrs. Corriesande Talbert were delivered to the bank as a part of the consideration of the assignment, and that they were not cashed until two days later.    The testimony certainly shows that these two checks

entered into the purchase of the note and mortgage. Counsel for the defendant has failed to offer any testimony going to show that either plaintiff knew John L. Talbert was borrowing large sums of money from the defendant bank, or that she entered into any conspiracy to defraud the bank, or that she knew of any likelihood that the bank would be defrauded. The mortgage which she purchased was on record and it was notice to the world that it was outstanding and even if she had known that John L. Talbert was dealing with the bank, there was no requirement of law that she should notify the bank that she intended to claim a lien under a mortgage which was of record and which was itself notice of the lien. If John L. Talbert had furnished the money to pay for the mortgage and had it assigned to his mother with the intention of withholding his property from creditors, even though subsequent creditors, and she had entered into the scheme with him to defraud the subsequent creditors, the assignment would be void, but there is no testimony to establish such fact and I cannot so find. All the testimony as to the conversation between John L. Talbert and bank officers is incompetent as to plaintiff, as is the testimony as to conversation between bank officers and officers of the Bank of McCormick.

Upon consideration of all the testimony in this case, I am of the opinion that the plaintiff is entitled to a foreclosure of the mortgage for the payment of the mortgage debt. *Lis pendens* having been duly filed and proof of default having been made as to the defendant, G. J. Sanders, as trustees in bankruptcy of John L. Talbert, and John L. Talbert, and it appearing to the Court that there is due upon the plaintiff's mortgage debt the sum of three thousand seven hundred fifty and 12-100 ($3,750.12) dollars, together with ten per cent. of the said amount as attorney's fees, making a total of four thousand one hundred twenty-five and 11-100 ($4,125.11) dollars.

It is ordered, adjudged and decreed, that the premises described in the complaint be sold by the master of Abbeville county, at public auction at Abbeville courthouse, on sales day in January next, or some succeeding sales day, without the further order of the Court, for cash, after due advertisement and public notice, as required by law.

It is further ordered, that upon the compliance with the terms of sale, the master do execute to the purchaser at such sale, good and sufficient title in fee simple to the premises so sold.

It is further ordered, adjudged and decreed, that out of the proceeds of sale, the master do pay any taxes and assessments due against the said lands, and that he do next pay the costs and disbursements of this action, to be hereafter taxed, except the costs of defendant's witnesses, and that he do also pay the expenses of such sale and that the balance of the proceeds of sale, or so much as shall be necessary to pay the same in full, be applied to the payment of plaintiff's mortgage debt, as above reported with interest at seven per cent. from October 20th, 1913.

It is further ordered, that the master do take receipts for all sums so paid, and that he file them in his office and keep them on file, and that he do report his proceedings hereunder with all convenient speed, certifying the amount remaining due, if any, upon the mortgage debt of the plaintiff, after the sale of the said premises.

It is further ordered, that the purchaser at such sale be let into possession of the said premises upon the production of the master's deed thereto.

It is further ordered, adjudged and decreed, that should the purchaser at such sale fail to comply with the terms of sale within five days thereafter that the master do resell the said premises on the same or any succeeding sales day, without the further order of the Court on the same terms and conditions and at the risk of the former purchaser.

And, it is further ordered, adjudged and decreed, that the defendants, and each of them be forever barred and foreclosed of all right, title, interest and equity of redemption of, in, or to the said premises, or any part thereof:

The following is a description of the premises ordered sold:

"Lots Nos. 7 and 8 of land, situate, lying and being in the town of McCormick, in the county of Abbeville, State of South Carolina, each lot having a frontage of one hundred feet on Cherry street and running back two hundred feet to the back lots Nos. 3 and 4, in the same block, being the lots in town of McCormick, on which is situated the residence at that time, and now occupied by said John L. Talbert, as a residence." S. W. G. Shipp, Judge Eighth Circuit. December 14th, 1913.

*Mr. Wm. N. Grayden,* for appellant, cites: *Sufficiency of evidence to show loss of paper:* Greenleaf Ev., sec. 558; 41 S. C. 194. *Proof of existence of paper:* Greenleaf Ev., sec. 560, 569. *Circumstances to show fraudulent assignment:* 66 S. C. 107; 38 S. C. 279; 32 S. C. 186; 20 Cyc. 793; 29 S. C. 395; 58 S. C. 418. *Right of creditor to attack assignment:* 38 S. C. 496. *Badge of fraud:* 75 S. C. 334; 14 Rich. L. 237; 38 Am. St. Rep. 667; 20 S. C. 764, 771.

*Messrs. Greene & Hill,* for respondent.

April 20, 1914.

The opinion of the Court was delivered by Mr. Justice Watts.

This was an action for foreclosure and sale by plaintiff against the defendants, commenced August 23, 1913. After issue joined it was referred to the master to take testimony. Upon the pleadings in the case, and the testimony taken by the master, the cause was heard by his Honor, Judge Shipp,

at the October term of the Court, 1913, and he subsequently, to wit, December 19, 1913, filed his decree in favor of the plaintiff. For a proper understanding of the case his decree should be embodied in a report of the case. After entry of judgment the Farmers Bank duly appealed therefrom. The exceptions, twenty-two in number, will not be taken up *seriatim,* but only the questions raised by them considered. The first question, covered by the first seven exceptions, is that there was not sufficient evidence to allow secondary evidence of the alleged assignment to be offered at all, and even if it was sufficient to let in secondary evidence the evidence offered did not prove the assignment. The execution of the note and mortgage are not denied, there was testimony that the plaintiff's money paid for the mortgage and note, and that they were delivered to her husband, who was her agent, and his Honor held that there was sufficient evidence of the assignment in equity independent of any written assignment and to this holding there was no exception. As was said in *Stoddard* v. *Hill,* 38 S. C. 385, 17 S. E. 138: "An assignment of note and mortgage is not required by law to be executed in the presence of witnesses, and, therefore, when unattested by a subscribing witness, may be proved by any one who was present and saw the assignment executed. * * * The complaint avers that the plaintiff is now the legal owner and holder of said mortgage. The note is payable to bearer. In *Coleman* v. *Dunlap,* 18 S. C. 594, it was held when a note was payable to bearer, and plaintiff stated he was the owner of the note, that inasmuch as he had possession of the note, which itself was *prima facie* evidence of ownership, such statement was admissible, and was all that was necessary to sustain the action." *Stoddard* v. *Hill,* 38 S. C. 392, 17 S. E. 138. There is no question but that the plaintiff was in possession of the note and mortgage in dispute, and there is no evidence that anything has ever been paid to her thereon.

There was evidence that after plaintiff got in her possession the note and mortgage that they were deposited in defendant's bank with other papers for safe-keeping, and after a thorough search by the Talberts of every conceivable place, other than the bank, they cannot be found. Notice was given the bank to produce the papers, and they testified that the papers were not in the bank. We do not think his Honor was in error in finding that the papers were lost, and in allowing the contents of the assignment to be shown by secondary evidence. The appellant fails to convince us that his Honor was in error in finding the assignment was to plaintiff as the evidence convinces us that in fact the assignment was to plaintiff, M. L. Talbert, and that she purchased the same, and that the note and mortgage were assigned to her, and she got possession of them from the Bank of McCormick, the owners and holders of the same, on February 20, 1909, that it was open and unsatisfied on that day, and being in possession of the same she was *prima facie* the owner and holder of the same, and the burden is on the defendant to show payment, satisfaction, or that she is not the owner and holder of the same.

These exceptions are overruled.

The other exceptions impute error to his Honor in holding that the plaintiff was the owner and holder of the note and mortgage, was *bona fide* innocent purchaser for value, and in not holding that she was a fraudulent holder, and that she had no interest in it, and that the money paid the Bank of McCormick was in fact the money of John L. Talbert, and that the mortgage was thereby satisfied, but kept open and held by his mother in order to enable John L. Talbert to take in, cheat and defraud his creditors, especially the defendant, and retained the same in her possession unsatisfied in order that John L. Talbert might in the future swindle some one, and that there was a conspiracy entered into between the plaintiff and John L. Talbert for the purpose of defrauding the creditors of John L. Talbert, especially the Farmers

Bank, and that all parties to the transaction were guilty of moral fraud, and that the whole transaction was null and void for this reason, and that he should have found further that Talbert (John L.) was largely in debt at the time of alleged assignment, and that the transfer of the note and the mortgage to the mother was made with intent to delay, hinder, and defraud his creditors, and was therefore null and void.

All the evidence as to communications that John L. Talbert had with the officers of the bank, defendant, and all other parties, when the plaintiff was not present, was objected to when the testimony was taken. This objection was proper and must be sustained as the plaintiff `could not be bound or affected by any statement made by John L. Talbert in reference to the transfer and assignment or payment of the note and mortgage in her possession when she was not present when the statement was made. · It is true, that the plaintiff purchased the note and mortgage shortly after its maturity. If it be a negotiable note purchased before maturity and transferred before maturity it would have carried with it the same protection to the mortgage its accessory as such paper is entitled to. *Carpenter* v. *Longan,* 16 Wall. 271; *Dearman* v. *Trimmier,* 26 S. C. 506, 2 S. E. 501; *Patterson* v. *Rabb,* 38 S. C. 138, 17 S. E. 463. But there is no contest between her and the maker of the mortgage, they both agree that the mortgage is unpaid and unsatisfied, and the defendant bank is the one who assails it. It is in evidence that the Farmers Bank was not an existing creditor of John L. Talbert at the time of the alleged assignment of the mortgage in suit. The evidence fails to disclose any outstanding indebtedness on the part of John L. Talbert on February 20, 1909, except the debt due his mother. It is true he had been unfortunate and failed in business before this, but his indebtedness had been compromised and settled. No creditor, who was in existence at that time of John Talbert, is before the Court contesting the

rights of the plaintiff. The claim of the appellant did not arise until 1910, nearly two years after the alleged assignment. All of John L. Talbert's creditors, including the Farmers Bank, are subsequent to the assignment, and none are contesting except the Farmers Bank. It was unfortunate that the bank relied on the statement of the officers of the Bank of McCormick that the note and mortgage had been paid, if they made any such statement, the mortgage was on record open and unsatisfied. On December 21, 1910, he gave a mortgage to the Farmers Bank, and on February 9, 1911, he gave another to this bank, and informed Cashier Robinson that the mortgage had been paid. Robinson went to the Bank of McCormick, and on January 20, 1912, got from Britt, cashier, a certificate that the mortgage of John L. Talbert to them (the one now in suit) had been paid. There is no pretense that there is any evidence that the plaintiff was present when the conversations, transactions, and statements were made by John L. Talbert, and Britt to Robinson, and she cannot be bound or affected thereby. If she was the owner and holder of the note and mortgage neither the debtor, Talbert, nor the Bank of McCormick, could legally have it marked satisfied. There is sufficient evidence in the case to find that the appellant was put on notice that the mortgage was open and unsatisfied, and sufficient evidence to charge it with notice that M. L. Talbert claimed some interest therein sufficient for it to make inquiry, and there is sufficient evidence to conclude that Robinson was aware of this fact, and that he failed to investigate sufficiently, but relied on statements of John L. Talbert and Britt. The bank extended credit in first instance with mortgage open, and continued to do so nearly three years after he was deceived by the statement of John L. Talbert. We do not think under the evidence in the case that there was actual or moral fraud in the case, or that the assignment was made with intent to hinder, delay, defeat, or defraud any creditor, or that the assignment was fraudulent

as to subsequent creditors under the cases of *Walker, Evans & Cogswell* v. *Bollemann Bros.*, 22 S. C. 512; *Jackson* v. *Plyer*, 38 S. C. 498, 17 S. E. 255; *Gentry* v. *Lanneau*, 54 S. C. 514, 32 S. E. 523.

We do not think under the evidence that the assignment should be set aside as being fraudulent and voluntary either under the Statute of Elizabeth or the assignment act. Cut out the incompetent evidence of John L. Talbert and other witnesses as to statements made by them at various times in reference to the mortgage being paid, and the various transactions of John L. Talbert, which she confessedly had nothing to do with, etc., incompetent by reason of the fact that the plaintiff was not present, and no pretense that she knew of, had notice or authorized any such statements and the evidence to make out defendant's charges and allegations against plaintiff is vague, meagre, indefinite, and unsatisfactory, and does not satisfy, by the preponderance of the evidence the truth of the charge. The appellant has failed to convince us that the transaction, in reference to the assignment and transfer of the assignment, was voluntary, or that there was actual and positive fraud; on the contrary, we are satisfied with the findings and decree of the Circuit Judge, and we see no reason why any of the exceptions should be sustained. All exceptions are overruled.

Judgment affirmed.

MR. CHIEF JUSTICE GARY, *dissenting*. I dissent on the ground, that the testimony shows that the plaintiff was not a *bona fide* holder of the note and mortgage herein.